**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM CRUZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 12-CV-6665 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| THOMAS DART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

"A priapism is 'a prolonged persistent erection which is painful and last[s] for greater than four hours.'" Defs.' Rule 56 Statement Material Facts ("Defs.' SOF") ¶ 64, ECF No. 124 (quoting Dep. of Dr. Christopher Lodowsky 41:4–7, *id.* Ex. 7). Plaintiff William Cruz ("Cruz") developed a priapism in separate incidents on April 19 and 25, 2012, while he was being held as a pretrial detainee at the Cook County Jail ("CCJ"). *See* Defs.' SOF ¶ 1 (Cruz entered CCJ on Feb. 20, 2012). He brought this action under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs against Cook County; Cook County Sheriff Tom Dart; and three correctional officers, Michal Burkart ("Burkart"), Phillip Martin ("Martin"), and Sharon Cox ("Cox") primarily for delaying treatment of his priapisms. Cruz alleges that he experienced excruciating pain, had two avoidable surgical procedures, and suffered tissue damage, impotence, and psychological harm as a result of defendants' deliberate indifference.

Defendants move for summary judgment. For the following reasons, the court grants the motion in part, finding that a genuine factual dispute exists over whether Cox was deliberately indifferent to Miller's complaints of severe pain on April 25, 2012.

1

# I. FACTUAL BACKGROUND

Local Rule 56.1(a)(3) requires a party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. L.R. 56.1(a)(3)). Under Local Rule 56.1(b)(3), the nonmoving party then must submit a "concise response" to each statement of fact, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). The party opposing summary judgment may also present a separate statement of additional facts "consisting of short numbered paragraphs," with citations to the record, that require the denial of summary judgment. N.D. Ill. L.R. 56.1 (b)(3)(C); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). For summary judgment purposes, Local Rule 56.1(a) requires the court to "deem admitted those facts that are not contested in the parties' submissions related to the motion for summary judgment." *Robinson v. Bandy*, 524 F. App'x 302, 305 (7th Cir. 2013) (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006)).

In their reply, the defendants raise a number of objections to Cruz's Rule 56.1 statement and his response to their Rule 56.1 statement. Most of these defects do not affect the outcome here. The court disregards certain argumentative or unsupported responses regarding material facts, most notably Cruz's unsupported assertion that priapism is a well-known reaction to certain medications, *see* Pl.'s Resp. to Defs.' SOF ¶ 27, ECF No. 139. *See, e.g.*, *Ciomber*, 527 F.3d at 643–4 (affirming exclusion of unsupported, argumentative statements in a plaintiff's Rule 56.1 response); *Bolden v. Dart*, No. 11 C 8661, 2013 WL 3819638, at *1 (N.D. Ill. July 23, 2013) (collecting cases and deeming some of the movant's Rule 56.1 statements admitted

because opposing party did not cite record evidence disputing them in Rule 56.1(b)(3) response). Except where otherwise noted, the court accepts the following undisputed facts as true for the purpose of deciding defendants' summary judgment motion.

## A. The April 19 Incident

Burkart was assigned to work the overnight shift on the unit where Cruz was housed beginning at 11:00 p.m. on the 18th and lasting through 7:00 a.m. on the 19th. Defs.' SOF ¶ 26. Cruz began banging loudly on his cell door and demanding medical attention shortly after his symptoms developed on April 19, 2012. Pl.'s SOF ¶ 3. Cruz testified at his deposition that his door was "right by the officer's section." Cruz Dep. at 28:23–24. The parties direct the court to no evidence of Burkart's whereabouts during this time period, however.

Before he entered the CCJ, Cruz had an experience similar to a priapism but not to the extent of the incidents on April 15 and 25, 2012. *See* Defs.' SOF ¶¶ 5, 7–8. Cruz alleges that he developed priapisms as a result of taking medication he was prescribed while at the CCJ. Cruz estimated that he began experiencing symptoms of a priapism "somewhere in the four--three to four range, maybe five." Cruz. Dep. 55:8–10; *see also* Pl.s' Resp. to Defs.' SOF ¶ 12 (so admitting). According to Cruz's testimony, he was not taken to the dispensary (presumably on his tier of the CCJ) for "maybe two hours" after he first began complaining about his symptoms. Cruz Dep. 57:1–3; *see also id.* at 25:17–18.

The time at which Cruz first developed symptoms, spoke with Burkart, and was sent for further care is disputed. The medical logbook maintained by Burkart states that Cruz complained of a "reaction to medication." Defs.' Ex. 3 at 1. The entry also indicates that Burkart called the dispensary in Division 10 at 4:30 a.m. Defs.' SOF ¶ 3; Defs.' Ex. 3 at 1 (copy of logbook). Another entry in the logbook states that Cruz was taken to the Cermak Health

Facility ("Cermak") by another officer at 5:00 a.m. *See* Defs.' Ex. 3 at 1. Burkart had no further contact with Cruz after Cruz was taken to the dispensary. Defs.' SOF ¶ 35. For present purposes, Cruz's testimony that he banged on his door for two hours after he developed symptoms demanding medical attention must be accepted as true.

Cruz was eventually taken to Cermak. He testified that he talked to different "officer[s] who [were] in charge of the waiting room" at Cermak on April 19 and 25. Cruz. Dep. at 34:21–24. Both officers told him that patients "were seen in the order they're received. First in/first out." *Id.* at 35:1–6. He was transported to Stroger Hospital at 8:01 a.m. on April 19, 2012, where he received treatment.[1] *See* Pl.'s SOF ¶ 4.

**B. The April 25 Incident**

Martin "was assigned to work the 11:00 p.m. to 7:00 a.m. shift in 2012," and he was assigned to the tier and unit where Cruz was housed on April 24–25, 2012. Defs.' SOF ¶¶ 19–20. Cox was assigned to the same tier on the 7:00 a.m. to 3:00 p.m. shift on April 25, 2012. *Id.* ¶ 21. "Neither Martin nor Cox knows what a priapism is." Defs.' SOF ¶ 22.

Cruz became aware of priapistic symptoms when he awoke around 4:00 or 5:00 a.m. on April 25, 2012, due to the pain he was experiencing. *See* Cruz Dep. 61:13–15. Cruz complained to a prison guard working the third shift, identified only as "John Doe" in Cruz's deposition, that Cruz "was in severe pain from a priapism and was told there was nothing [the guard] could do because it would delay [the guard] from leaving for the day." Defs.' SOF ¶ 17 (citing Cruz Dep. 28:2-10).

Cruz complained to Cox at or shortly after she came on duty at 7:00 a.m. that he was in severe pain and experiencing priapistic symptoms. *See* Defs.' SOF ¶ 10; Pl.'s SOF ¶ 8. Cox

---

[1] Defendants admit this fact for purposes of the present motion only, but they contend that it is irrelevant. Defs.' Resp. to Pl.'s SOF ¶ 4, ECF No. 142.

responded with words to the effect of, "You're still conscious, so that's not an emergency."  Pl.'s

SOF ¶ 8.  She told Cruz to fill out a health service request form and that she would send him for

medical treatment later.  Defs.' SOF ¶ 10.

An unidentified nurse came onto the unit at approximately 8:30 a.m.  Defs.' SOF ¶ 14.

Cruz testified as follows about the interaction:

> Q.  And what did you tell this [nurse] and what did this [nurse] tell you?
>
> A.  Well, I told her, that I was having another episode of priapism.
> I told her that I previously had one on the 19th.  I told her that I
> was actually in a lot of pain.  And she told me that just by virtue of
> the priapism that it was an emergency and I should get down to the
> infirmary.
>
> Q.  Did she transfer you to the infirmary?
>
> A.  I 'm not really sure what happened there.  There was some kind
> of miscommunication between her and Cox.  But I was under the
> impression that I was supposed to be in the infirmary immediately.
> Ms. Cox, however, was under the impression when they called her
> I was to be transferred to the infirmary.
>
> Q.  What do you base this conclusion about what Officer Cox
> thought on?
>
> A.  Because when I complained to Cox about the fact that I 'm still
> on the unit and not in the infirmary, she replied that I will go when
> they call.

Cruz Dep. 59:20–60:19; *see also* Defs.' Resp. to Pl.'s SOF ¶¶ 9–11.  "When plaintiff complained

to defendant C.O. Cox several hours after she had been told plaintiff had a medical emergency

and that he still had not been sent to the infirmary, she told him that he would 'go when they

call.'"  Pl.'s SOF ¶ 13 (quoting Cruz Dep. 60:18–19).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving summary judgment motions, "facts must be viewed in the light most favorable to, and all reasonable inferences from that evidence must be drawn in favor of, the nonmoving party–but only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor") (citations and quotations omitted). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### III. THE COUNTY AND SHERIFF'S LIABILITY UNDER *MONELL*

Under *Monell*,[2] "[a] local governing body may be liable for monetary damages under §

1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and

promulgated by its officers; (2) a governmental practice or custom that, although not officially

authorized, is widespread and well settled; or (3) an official with final policy-making authority."

*Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell*, 436

U.S. at 690 and *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009)) (applying

rule to Cook County and its sheriff).  A § 1983 plaintiff must also prove causation under *Monell*,

in this context meaning evidence "that the unconstitutional custom, policy, or practice at the Jail

'was the moving force behind the constitutional deprivation.'"  *Daniel v. Cook Cnty.*, 833 F.3d

728, 736 (quoting *Montaño v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008)).  Cruz alleges

in his second amended complaint that Dart and Cook County had a policy and practice of "seeing

patients in the Cermak Hospital Health Care Unit on a first-come first-served basis, regardless of

the urgency of their presenting medical condition," which caused him to wait for hours in the

Cermak facility and forced him to undergo surgery that would not have been necessary had he

been seen on an emergency basis.  ECF No. 71 at 2.

In their motion for summary judgment, Dart and Cook County point to "affirmative

evidence that" they claim "negates an essential element of the nonmoving party's [*Monell*]

claim."  *Modrowski*, 712 F.3d at 1169 (quoting *Celotex Corp.*, 477 U.S. at 331 (Brennan, J.,

dissenting)) (comparing and contrasting two routes for movant to carry initial burden at summary

judgment); *see* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by citing to particular parts of materials in the

record, including depositions . . . .").  The motion for summary judgment frames Cruz's *Monell*

---

[2] *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)

claims under the second category listed in the previous paragraph, i.e., a custom or practice that is not officially authorized but nonetheless widespread and well-settled. *See Thomas*, 604 F.3d at 303. Cruz's response eschews any discussion of liability under *Monell*, *see* ECF No. 134 at 4–5, though he claims in his response to defendants' Local Rule 56.1 statement that the pertinent facts are disputed, ECF No. 139 ¶¶ 55–58. The court, therefore, accepts Dart and Cook County's framing of Cruz's *Monell* theory, given Cruz's failure to address *Monell*. *See Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 ("We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions." (quoting *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 237 (7th Cir. 1996) and collecting authority)); *Alexander v. Caraustar Indus., Inc.*, 930 F. Supp. 2d 947, 957 (N.D. Ill. 2013) (stating that at summary judgment, "[f]ailure to respond to an opposing party's argument 'is not necessarily a waiver, but it is a risky tactic, and sometimes fatal'" (quoting *Law v. Medco Research Inc.*, 113 F.3d 781, 787 (7th Cir. 1997)); *Indep. Trust Corp. v. Fid. Nat'l Title Ins. Co. of N.Y.*, 577 F. Supp. 2d 1023, 1039 (N.D. Ill. 2008) (declining to analyze whether certain statements in the record were false because the party opposing summary judgment "omitted any argument in its briefing that these misrepresentations constituted fraud, and so has waived any claims based on these statements" (citing *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008))); *Jenkins v. White Castle Mgmt. Co.*, Case No. 12-CV-7273, 2016 WL 5476234, at *13 (N.D. Ill. Sept. 29, 2016) (Gottschall, J.) (finding waiver where party opposing summary judgment did not address argument in its response).

Dart and Cook County rely on the deposition of Nancy Chackumkal ("Chackumkal"), a registered nurse who had worked at Cermak since 2011. Defs.' SOF ¶ 51. Dart and Cook County have presented evidence that the "medical team," usually a licensed practical nurse or a

registered nurse, at the dispensary and Cermak triages patients and determines each patient's priority based on the patient's complaint and physical condition. Defs.' SOF ¶¶ 55–57; *see* Chackumkal Dep. 25:16–28:10, Defs.' Ex. 6. ECF No. 127-2.) Chackumkal also testified that a detainee who presented with priapism would be given priority because the detainee would have to be seen by a physician rather than a nurse. Defs.' SOF ¶ 58; *see* Chakumkal Dep. 27–30–28:10.

Cruz points to his own deposition to dispute Chackumkal's. *See* Pl.'s Resp. to Defs.' SOF ¶¶ 55–57. Cruz testified that he was made to wait on April 19 and 25, 2012, while other patients who, based on his observations, did not appear to be suffering from serious conditions (at least, not as serious as his) were seen. *See* Cruz Dep. 29:16-32:4, ECF No. 124-1, Defs.' Ex. 1. Cruz further testified that he talked to different "officer[s] who [were] in charge of the waiting room" at Cermak on April 19 and 25. Cruz. Dep. at 34:21–24. Both officers told him that patients "were seen in the order they're received. First in/first out." *Id.* at 35:1–6. Those "officers have no involvement in the actual treatment of detainees;" instead, they "overs[aw] the administration of the policies" for "security purposes." *Id.* at 35:7-13.

Cruz and Chackumkal's depositions raise a genuine fact question about whether a "first come, first serve" practice existed on April 19 and 25, 2012. A reasonable fact finder could conclude that the security officers in charge of the waiting room who told Cruz that patients were seen on a "first come, first serve" basis were not on the "medical team" Chackumkal testified makes triage decisions, especially given her testimony that the person making the triage decision is usually a nurse. *See* Chackumkal Dep. 26:4-12. Hence, based on Cruz's unrebutted testimony that he waited for hours, a reasonable jury could find that security officers made detainees wait on a "first come, first serve" basis to see a doctor or nurse who then, and only then, triaged the

detainee.  Indeed, Chackumkal gave the example of a detainee who has a headache in her deposition.  Chackumkal Dep. 28:4-7.  She explained that a nurse may decide to give the detainee an over-the-counter painkiller without seeing a doctor.  *Id.*  A jury viewing her testimony in a light favorable to Cruz could conclude that a patient consultation and assessment would not ordinarily occur in the waiting area when a detainee first arrives, bolstering the inference that the officer in charge of the waiting room ran a pre-triage queue of detainees on a "first come, first serve" basis.

However, for *Monell* liability to attach based on an official custom or practice, the custom or practice must be "widespread" and "well-settled."  *Thomas*, 604 F.3d at 303; *accord Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016).  This inquiry throws light on the underlying *Monell* question, whether "a constitutional tort . . . was committed (that is, authorized or directed) at the policymaking level of government" rather than by individual actors.  *Glisson v. Ind. Dep't of Corr.*, ___ F.3d __, 2017 WL 680350, at *5 (7th Cir. 2017) (en banc) (quoting *Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011)).  "[T]here is no clear consensus as to how frequently . . . conduct must occur" for a jury to infer that a widespread custom or practice exists, but generally, "it must be more than one instance, or even three."  *Thomas*, 604 F.3d at 303 (internal quotation and citation omitted); *see also Chatham*, 839 F.3d at 685 ("*Monell* claims based on allegations of an unconstitutional municipal practice or custom—as distinct from an official policy—normally require evidence that the identified practice or custom caused multiple injuries." (citing *Thomas*, 604 F.3d at 303 and *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005))).  The court does not mechanically count the number of incidents, though, but instead looks for "competent evidence tending to show a general pattern of repeated behavior."  *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006).  *Davis*, for instance involved a

single incident of the plaintiff not receiving methadone treatment after being booked into the CCJ. The plaintiff presented evidence at summary judgment of "delays inherent in the methadone verification procedures as related by [a] pharmacist . . . and the widespread delays attested to by [two witnesses] based on their experiences as a correctional officer and social worker, respectively, among other circumstantial evidence." *Davis,* 452 F.3d at 694. That evidence, held the Seventh Circuit, created a triable issue on the plaintiff's *Monell* theory that a widespread custom or practice existed.[3] *Id.* at 694–95.

Cruz points to no circumstantial evidence of the existence of a policy of "first in, first out" queueing at the CCJ other than the two incidents he experienced, however. This record, therefore, resembles cases like *Gable v. City of Chicago*, in which the Seventh Circuit affirmed the entry of summary judgment dismissing § 1983 claims against the City of Chicago because "three incidents where vehicle owners were erroneously told that their vehicles were not at Lot 6 do not amount to a 'persistent and widespread practice.'" 296 F.3d 531, 538 (7th Cir. 2002). Cruz's bare testimony about two incidents, six days apart, in which the security officer in charge of the waiting room told him patients were seen on a "first come, first serve" basis does not create a genuine fact issue on whether those practices resulted from a decision at the policymaking level by acquiescence in a widespread, persistent practice. *See Chatham*, 839 F.3d at 685–86 (holding that single incident in which on-call doctor for prison slept through phone call was insufficient to show widespread custom or practice); *Gable*, 296 F.3d at 538; *Lewis ex rel. Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316,1326–27 (holding two incidents

---

[3] Inferring the existence of policymaker acquiescence in a widespread custom or practice from a series of incidents differs subtly but importantly from the situation in the Seventh Circuit's recent en banc holding in *Glisson, supra*. There, the plaintiff presented evidence that the policymakers had knowledge of, but chose not to implement, Indiana Department of Corrections Guidelines requiring healthcare providers to have policies and procedures for managing chronic diseases. *Glisson*, 2017 WL 680350, at *6. That evidence allowed a finder of fact to conclude that the policymaker "consciously chose the approach that it took," leaving the question of whether that choice was the moving force behind the constitutional wrong for the jury as well. *Id.* Cruz points to no evidence of a policy choice consciously not taken here or evidence that it was made with deliberate indifference. *See id.* at *5–*6.

of strip searching high school students did not plead a widespread custom or practice even where complaint alleged that school board president subsequently publicly endorsed practice of strip searching students with parental consent); *see also Thomas*, 604 F.3d at 303 ("[T]he plaintiff must demonstrate that there is a policy at issue rather than a random event.").

To reiterate, Cruz does not attempt to utilize any particular method of establishing *Monell* liability in his response, even the one suggested in the motion for summary judgment and just analyzed. *See Indep. Trust Corp.*, 577 F. Supp. 2d at 1039 (N.D. Ill. 2008) (finding waiver where argument not addressed in response to motion for summary judgment). He makes no effort to show that the officers in charge of security in the Cermak waiting room on April 19 and 25, 2012, "implement[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Cook County or Dart]'s officers." *Glisson*, 2017 WL 680350, at *5 (quoting *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35 (2010)). Nor does Cruz analyze officially promulgated policies for gaps. *See Daniel*, 833 F.3d at 734 ("An unconstitutional policy can include both implicit policies as well as a gap in expressed policies." (citing *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016))). Also, "in a 'narrow range of circumstances,' the possibility of harm from a custom or practice may be so obvious that evidence of a series of prior injuries is not needed to support an inference of deliberate indifference." *Chatham*, 839 F.3d at 685 (quoting *Calhoun*, 408 F.3d at 381). Cruz has not tried to show that this is "one of those rare cases." *Id.* (holding that this rare exception did not apply to case of single incident leading to inmate's death from asthma attack). And the court will not attempt to determine whether this is such a case on its own. *See Calhoun*, 408 F.3d at 381 (observing that though the Supreme Court "left room for this 'narrow range of circumstances,' it

is telling that no court has directly addressed such a case" (citing *Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 929 (7th Cir. 2004))).

## IV. INDIVIDUAL DEFENDANTS

"The Due Process Clause of the Fourteenth Amendment prohibits 'deliberate indifference to the serious medical needs of pretrial detainees.'" *Pittman ex rel. Hamilton v. Cnty. of Madison*, 746 F.3d 766, 775 (7th Cir. 2014) (quoting *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir. 1991)); *see also Treadwell v. McHenry Cnty.*, 193 F. Supp. 3d 900, 906 (N.D. Ill. 2016) ("'[D]eliberate indifference to [the] serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain' such that a prisoner may bring a cause of action against a prison official." (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)) (alterations in original)). To show deliberate indifference, the plaintiff "must show that his medical condition was objectively serious." *Pittman*, 746 F.3d at 775. The plaintiff must also make a subjective showing. *See id.* The "official must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and the official 'must also draw the inference.'" *Id.*, at 776 (quoting *Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir. 1999); *see Farmer v. Brennan*, 511 U.S. 825, 837, (1994). Showing that a prison official was negligent does not suffice: "Deliberate indifference is not medical malpractice." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (quoting *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013)). "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim." *Id.* (citing *Farmer*, 511 U.S. at 836–38).

The Seventh Circuit has "identified several circumstances that can be enough to show deliberate indifference." *Petties*, 836 F.3d at 729. Two are potentially at issue here. First, "a

prison official's decision to ignore a request for medical assistance" can constitute deliberate indifference. *Id.* (citing *Estelle*, 429 U.S. at 104–05). Second, "evidence . . . [of] an inexplicable delay in treatment which serves no penological interest" can warrant a finding of deliberate indifference. *Id.* at 730 (citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) and *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007)). Not all delays cross the line into deliberate indifference, however; the length of a permissible delay instead "depends on the seriousness of the condition and the ease of providing treatment." *Id.* (citations omitted). Finally, on a deliberate indifference claim based on a delay in treatment, the plaintiff must come forward with "independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Id.* at 730–31 (citing *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007)) (other citations omitted).

## A. A Genuine Dispute Exists Over Whether Cruz Suffered From an Objectively Serious Medical Condition

The individual defendants do not dispute that "a priapism is an objectively serious medical condition generally." Mem. Supp. Mot. Summ. J. 8, ECF No. 125. Nevertheless, they argue that "the very nature of Plaintiff's priapism supports Defendants' position that they did not have sufficient knowledge of the risk so as to impart constitutional liability." *Id.* "A medical condition is deemed to be objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Given defendants' concession and the undisputed fact that Cruz was ultimately sent to a hospital for both incidents, a reasonable fact finder could conclude that his condition was objectively serious. *See Withers v.*

*Carter*, 13 C 1643, 2015 WL 5920658, at *3 (N.D. Ill. Oct. 8, 2015) (denying summary

judgment on objective element because "record show[ed] that the priapism caused plaintiff

significant pain, and defendants deemed the condition serious enough to warrant sending him to

a hospital").

**B. Subjective Prong**

"Although a negligent or inadvertent failure to provide adequate medical care is

insufficient to state a deliberate indifference claim, it is enough to show that a defendant actually

knew of a substantial risk of harm to the inmate and acted or failed to act in disregard to that

risk." *Grieveson*, 538 F.3d at 779–80 (quoting *Gil v. Reed*, 381 F.3d 649, 661 (7th Cir. 2004))

(other citation omitted). Recall that to be liable for deliberate indifference, a prison guard "must

be 'aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists' and the official 'must also draw the inference.'" *Pittman*, 746 F.3d at 776 (quoting

*Higgins*, 178 F.3d at 511); *accord Farmer*, 511 U.S. at 837.

1. The Nature of Cruz's Condition Did Not Notify Guards of a Serious Medical Risk

Cruz cites *Grieveson v. Anderson* in his response. 538 F.3d 763 (7th Cir. 2008). The

*Grieveson* court held that a fact issue existed where the plaintiff submitted medical records and

affidavits tending to show that three prison guards took no action even though they knew the

plaintiff was suffering serious pain after another prisoner attacked him, leaving him with a

broken tooth. *See id.* at 768, 779–80. The medical records and affidavits created a fact issue on

whether the plaintiff's medical condition was objectively serious enough because they allowed

the jury to decide the question of "whether the delay 'unnecessarily prolonged and exacerbated'

[the plaintiff]'s pain" in his favor. *Id.* at 779 (citing *Williams v. Liefer*, 491 F.3d 710, 715 (7th

Cir. 2007)). The Seventh Circuit held that the same evidence created a fact issue on "the

officers' states of mind" because, implicitly, the nature of the plaintiff's condition made the need for medical care obvious enough to a layperson to support a deliberate indifference finding. *Id.* at 780.

Cruz points to no evidence showing that the need for medical care for a priapism is as obvious as a broken tooth, however. *See id.* at 779. Cruz's response to defendants' Rule 56.1 statement asserts that "[a] painful erection is a well-known side effect of certain psychotropic medications" but provides no citation corroborating his assertion. ECF No. 139 ¶ 27. Defendants have submitted undisputed evidence tending to show that cases of priapism have been relatively rare at the CCJ in the six years before March 2015. *See* Defs.' SOF ¶ 60 (testimony of doctor who worked at Cermak for six years that he had only two or three cases of priapism during that time; all were in the last few months). Priapism "is a rare side effect of Seroquel and other psychotropics, and a reported side effect of Paxil." *Adams v. Durai*, 153 F. App'x 972, 974 n.1 (7th Cir. 2005) (citing *Physicians' Desk Reference* 664 (59th ed. 2005)). Cruz identifies no evidence apart from the nature of priapism itself that would make the need for medical care obvious to laypersons like Burkart, Cox, and Martin. *Cf. Withers*, 2015 WL 5920658, at *3 (holding that jail doctors were not deliberately indifferent for failing to send detainee with priapism to the hospital).

2. No Evidence of Communications to Burkart Sufficient to Create Fact Issue on Deliberate Indifference

Cruz has not cited evidence from which a reasonable jury could find that he communicated sufficient information to allow Burkart to draw the inference that he should have been seen by a medical professional more quickly. Where a plaintiff premises a deliberate indifference claim on a communication about his condition for which the risk is not otherwise

obvious, the "plaintiff must demonstrate that 'the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety.'" *Arnett v. Webster,* 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)). Cruz did not testify at his deposition that he told Burkart that he was in pain, or that he thought his condition was serious. *See* Defs.' SOF ¶17. Burkart's logbook entries make no mention of a complaint of pain; they say only that Cruz complained of a reaction to medication. *See* Defs.' Ex. 3 at 1. Once Brukart delivered Cruz into the custody of jail medical personnel, he had a right to trust that they would provide for Cruz's serious medical needs. *See Arnett,* 658 F.3d at 755 ("if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.").

3. There is Insufficient Evidence Identifying Martin as the "John Doe" Officer Involved in the
   April 25 Incident

As for Martin, who was named as a John Doe defendant in the original complaint, Cruz does not specifically identify him as the person who told him that he would have to wait for the next shift on April 25, 2012. *See* Cruz Dep. 28:1-10. As Cruz puts it, Martin (and Cox) have no "recollection of plaintiff whatsoever." Pl.'s Resp. to Defs.' SOF ¶ 42, ECF No. 139. When considering whether to grant summary judgment based on an eyewitness identification, the court considers "(1) the opportunity of the witness to view the defendant at the time of the incident; (2) the witness' degree of attention at that time; (3) the accuracy of his prior description of the defendant; (4) the level of certainty demonstrated with respect to the subsequent identification; and (5) the time between the incident and the subsequent identification." *Chavez v. Ill. State Police*, 27 F. Supp. 2d 1053, 1078 (N.D. Ill. 1998) (citing *Yeatman v. Inland Prop. Mgmt., Inc.,*

845 F. Supp. 625, 629 (N.D. Ill. 1994)). Cruz analyzes none of those factors in form or substance. Cruz described the "John Doe" officer as a black male, approximately 5'10" tall, in his mid-thirties. Cruz. Dep. 27:1-9. The parties point to nothing in the record physically describing Martin or Burkart, and, the court can find nothing, though it is not required to hunt through the record, in, for example, Martin's deposition, Defs.' Ex. 5, ECF No. 124-4.

Indeed, Cruz's summary judgment filings highlight the ambiguity of his testimony. Without citing any evidence, Cruz identifies the "John Doe" of April 25, 2012, as Martin in his response to defendants' Rule 56.1 statement. ECF No. 139 ¶ 17. In his own Rule 56.1 statement, however, Cruz states that the "John Doe" of April 25 was Burkart. ECF No. 135 ¶ 7. Cruz described this person as "a John Doe" at his deposition. ECF No. 124-1 at 28:2. He amended his complaint to name Martin as the John Doe defendant after that deposition, but his amended complaint cannot create a fact issue at summary judgment. *See, e.g.*, *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011) ("Perhaps most troubling is the residents' reliance on allegations made in their complaint as 'evidence' to support their claims on summary judgment, which is 'not the proper standard for summary judgment.'" (quoting *Mosley v. City of Chicago*, 614 F.3d 391, 400 (7th Cir. 2010)) (other citations omitted)). Once Martin pointed to an absence of evidence in the record identifying him, Cruz was required to identify proper summary judgment evidence to create a genuine issue for trial. *See generally*, *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 397–98 (explaining interaction between Rule 56.1 statements and facts alleged in complaints); *see also* Mem. Supp. Mot. Summ. J. 11, ECF No. 125 ("Although Plaintiff alleges that he told Martin about his medical condition, he has never provided any testimony to substantiate that claim . . . ."). Because Cruz points to no evidence that would allow a reasonable fact finder to find that the "John Doe" he testified he spoke to

before 7:00 a.m. on April 25, 2012, was in fact Martin, he has not shown that Martin had notice

of any information that would have alerted him to Cruz's serious medical need. *See Todd v.

Lake Cnty. Sheriff's Dep't*, No. 2:08 CV 314, 2013 WL 2156470, at *10 (N.D. Ind. May 17,

2013) (dismissing John Doe defendants at summary judgment where the plaintiff provided no

evidence identifying them).

3. <u>A Fact Issue Exists on Whether Cox Was Deliberately Indifferent to Cruz's Emergency</u>

<u>Complaints of Severe Pain</u>

      Presumptively, "non-medical officials are entitled to defer to the professional judgment

of the facility's medical officials." *Hayes v. Snyder*, 546 F.3d 516, 528; *see also Arnett,* 658 F.3d

at 755. Nevertheless, "nonmedical officials can 'be chargeable with the . . . scienter requirement

of deliberate indifference' where they have 'a reason to believe (or actual knowledge) that prison

doctors or their assistants are mistreating (or not treating) a prisoner.'" *Hayes*, 546 F.3d at 527

(quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (other citations omitted). Thus, the

Seventh Circuit has upheld summary judgment in favor of non-medical prison officials where the

record showed that they "responded readily and promptly to each of [the prisoner]'s letters and

grievances" concerning allegedly poor medical treatment and the officials contacted medical

personnel "to assure themselves that his complaints did not require further action." *Id.* at 528.

As the Seventh Circuit recently reiterated, *Estelle* itself recognized that "prison guards . . .

intentionally denying or delaying access to medical care" can constitute deliberate indifference,

429 U.S. at 104–05, cited in *Petties*, 836 F.3d at 729.

      Measured against the *Estelle* standard, Cruz's testimony and medical evidence create a

fact issue on Cox's deliberate indifference. In context, a reasonable jury could find from Cruz's

testimony that he told Cox that he was in severe pain (serious enough to have woken him from

his sleep hours earlier) and that he needed emergency treatment. *See Cruz Dep.* 58:3-21; *see also id.* at 28:1-10 (testifying that he told "John Doe" officer earlier that he was in "severe pain"); Defs.' Resp. to Pl.'s SOF ¶ 14A, ECF No. 142 (Cox testified that "[i]mmediate referrals to the division infirmary/dispensary depended on the on-duty correctional officer being able to see some sort of injury"). On this record, a jury could find reasonably that Cox had no medical professional's judgment to which she was deferring. *See* Defs.' Resp. to Pl.'s SOF ¶ 8 (admitting that "[t]here is no evidence that defendant Cox ever called the infirmary about plaintiff's medical condition"); *see also Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (stating that even a prison nurse's deference to a doctor's orders "may not be blind or unthinking"). Cox did not, and does not, know what a priapism is, Defs.' SOF ¶ 22, but a reasonable jury could conclude that she knows what severe pain is. *See Rowe v. Gibson*, 798 F.3d 622, 635 (7th Cir. 2015) (Hamilton, J., concurring in part as to this issue) (stating that if prisoner "informed prison officials that he was in severe pain because he could not take his medication at particular times and they did nothing about it because they did not care about his pain, that is the very definition of deliberate indifference" (citing *Greeno v. Daley*, 414 F.3d 645, 653–54 (7th Cir. 2005)) (other citation omitted)).

Yet Cox responded, "You're still conscious, so that's not an emergency."[4] Pl.'s SOF ¶ 8. Drawing reasonable inferences in Cruz's favor, Cox did nothing for Cruz until 8:30 a.m. when Cruz spoke with a nurse doing rounds on the tier of the CCJ where Cruz was housed. *See* Pl.'s SOF ¶¶ 9–11. From all of that evidence, a reasonable jury could conclude that Cruz communicated to Cox that he was in "severe pain" from a priapism recurrence at approximately 7:00 a.m., but she deliberately chose to do nothing about it for an hour-and-a-half for no

---

[4] The court reproduces the quote attributed to Cox in the form to which defendants admitted in their response to the plaintiff's Rule 56.1 statement. The version in Cruz's deposition differs slightly, though not materially. *See* Cruz Dep. 58:20–21 (testifying that Cox said something like, "boy, this ain't no emergency, you still conscious").

legitimate, penological reason. *See Gayton v. McCoy*, 593 F.3d 610,623 (7th Cir. 2010) (reversing summary judgment for nurse where record showed that she "refused to treat or even see [prisoner] in spite of her serious medical condition"); *Boyce v. Moore*, 314 F.3d 884, 890 (officers who "completely ignored" requests to be taken to Cermak for follow-up medical treatment, but not supervisor, could be liable for deliberate indifference); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (allegation that CCJ officials completely ignored requests for psychological care stated deliberate indifference claim).

Cox also contends that Cruz has not come forward with independent evidence that any delay she caused in Cruz's treatment exacerbated his injuries or caused him unnecessary pain. "Even if [a detainee's] condition did not worsen from the delay, deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012) (citing *Arnett*, 658 F.3d at 751). These are separate theories; a plaintiff need not prove exacerbation where he relies on a theory that a delay unnecessarily prolonged his agony. *See id.*; *Rowe*, 798 F.3d at 627 (describing evidence as showing prison medical officials "were deliberately indifferent to [the prisoner]'s pain" without referring to an underlying medical condition); *Gayton*, 593 F.3d at 625 (holding fact issue existed where record showed defendant "actively ignored [prisoner's] requests for treatment" and medical evidence allowed "jury to find that [prisoner] incurred 'many more hours of needless suffering for no reason' as a result of [the defendant]'s inaction" (quoting *Grieveson*, 538 F.3d at 779)).

In addition, Cruz relies on independent, medical evidence to create a fact issue on whether Cox's delay unnecessarily prolonged his pain. Defendants do not dispute that "a priapism . . . is painful." Defs.' SOF ¶ 64. That evidence comes from the testimony of Cruz's

medical expert and therefore constitutes medical evidence of that fact.  *See id.*  Furthermore, while Cruz does not identify the person with whom he spoke before Cox on April 2, 2012, he did testify that he was in severe pain.  Cruz. Dep. 28:3-5.  Defendants' admission and Cruz's testimony would allow a reasonable jury to conclude that Cox prolonged Cruz's pain for no good reason.  *See Grieveson*, 538 F.3d at 779-80 (finding fact issue existed where defendant presented testimony and corroborating medical evidence).

## C. Qualified Immunity

The individual defendants also briefly argue that they are entitled to qualified immunity even if a genuine factual dispute exists.  Mem. Supp. Mot. Summ. J. 17–18.  "The purpose of the doctrine of qualified immunity is to shield public officers from liability 'consequent upon either a change in law after they acted or enduring legal uncertainty that makes it difficult for the officer to assess the lawfulness of the act in question before he does it.'"  *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (quoting *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999)).  "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

The genuine fact issues already identified preclude summary judgment for Cox on qualified immunity.  "The general standard for liability under the Eighth Amendment for refusal to treat a serious medical condition was well-established at the time of these events."  *Walker*, 293 F.3d at 1040 (citing *Ralston*, 167 F.3d at 1162); *see also Doe v. Gustavus*, 294 F. Supp. 2d 1003, 1012 (E.D. Wis. 2003) ("As the Seventh Circuit has noted, the Eighth Amendment prohibition against deliberate indifference to a prisoner's medical needs has been clearly

established since the Supreme Court's 1976 decision in *Estelle v. Gamble*." (citing *Walker v. Shansky*, 28 F.3d 666, 670 (7th Cir. 1994)). In *Benjamin*, *supra*, the Seventh Circuit denied qualified immunity to a prison nurse based on a genuine dispute of material fact because the record permitted the jury to find that the nurse refused to give a prisoner prescribed pain medication following a surgery for no legitimate reason. *See* 293 F.3d at 1040. And in *Ralston*, *supra*, the Seventh Circuit held that a genuine dispute of material fact existed on a prison guard's qualified immunity defense where the record included evidence that the guard refused a prisoner's request for his pain medication even after the prisoner explained that he could not swallow and was spitting blood. 167 F.3d at 1161–62. Under those cases and the cases discussed above, if the jury believes Cruz's version of events, Cox would not be entitled to qualified immunity because the jury could conclude that she needlessly prolonged Cruz's pain by completely ignoring his specific complaints shortly after she came on shift; the case law gave Cox reasonable notice that she had to do something, such as check with medical personnel, in the face of a complaint of persistent, severe pain Cruz described as an emergency. *See, e.g.*, *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009) ("Deliberately to ignore a request for medical assistance has long been held to be a form of cruel and unusual punishment . . . [,] provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized . . . ." (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997))).

## IV. CONCLUSION

For the reasons given above, the defendants' motion for summary judgment (ECF No. 123) is granted in part and denied in part. The court enters summary judgment in favor of all

defendants except Cox.  A status conference is set for April 7, 2017 at 9:30 a.m.


Date:  March 16, 2017                           _____/s/_____
                                                Joan B. Gottschall
                                                United States District Judge